**MATERN LAW GROUP, PC**
Matthew J. Matern (CA SBN 159798)
mmatern@maternlawgroup.com
Joshua D. Boxer (CA SBN 226712)
jboxer@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

**MATERN LAW GROUP, PC**
Sara B. Tosdal (CA SBN 280322)
stosdal@maternlawgroup.com
1330 Broadway, Suite 436
Oakland, California 94612
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff RUBIAN SAFLOR
individually, and on behalf of others similarly
situated

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBIAN SAFLOR, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ESA MANAGEMENT, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 22-cv-05800-AGT<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 13, 2024<br>Time: 10:00 a.m.<br>Ctrm: A – 15th Floor<br>Magistrate Judge: Hon. Alex G. Tse<br><br>Complaint Filed: August 12, 2022<br>Removal Filed: October 6, 2022<br>Trial Date: None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 13, 2024 at 10:00 a.m., or as soon thereafter as is convenient for the Court, in Courtroom A of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Rubian Saflor ("Plaintiff") will and hereby does move this Court for entry of an order:

1.    Granting final approval of the terms of the proposed class action and representative PAGA action settlement set forth in the Joint Stipulation for Class and PAGA Action Settlement and Release ("Settlement" or "Settlement Agreement"), as fair, reasonable, and adequate to all Class Members;

2.    Finding that the Class Notice distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best practicable notice to all Class Members under the circumstances;

3.    Finally certifying the Class for settlement purposes only;

4.    Ordering the funding and distribution of the Gross Settlement Sum of $1,780,000.00 pursuant to the terms of the Settlement Agreement, which shall include:

    a.  An award of reasonable attorneys' fees up to $593,333.33 to Class Counsel, as well as Class Counsel's litigation costs and expenses in the amount of $15,394.17;[1]

    b.  A Class Representative Service Payment to Plaintiff in the amount of $10,000.00;

    c.  Administration Expenses Payment in the amount of $30,000.00 to the Administrator; and

    d.  Payment of $100,000.00 for civil penalties pursuant to California Labor Code §§ 2698 *et seq.* ("PAGA"), of which seventy-five percent (75%), or

---

[1] The request for attorneys' fees and costs to class Counsel and the Class Representative Service Payment are fully addressed in the separately filed Motion for Attorneys' Fees and Costs and Class Representative Service Payment.

1    $75,000.00, shall be paid directly to the California Labor Workforce

2    Development Agency, and twenty-five percent (25%), or $25,000.00 shall be

3    distributed to Aggrieved Employees.

4    5.    Directing Defendant to separately pay its share of employer-side payroll taxes in

5    addition to the Gross Settlement Sum.

6    6.    Entering final judgment in the action.

7    This motion is based on this notice, the attached Memorandum of Points and Authorities,

8    the Declaration of Matthew J. Matern, the Declaration of Rubian Saflor, the Declaration of Jarrod

9    Salinas Regarding Notice and Settlement Administration, all documents and records on file in this

10    matter, and such additional argument, authorities, evidence and other matters as may be presented

11    by the parties hereafter.

12    Respectfully submitted,

13    DATED: November 8, 2024    **MATERN LAW GROUP, PC**

14

15    By: _____

16    MATTHEW J. MATERN
       JOSHUA D. BOXER

17    SARA B. TOSDAL
       Attorneys for Plaintiff Rubian Saflor,

18    individually, and on behalf of all others
       similarly situated

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.    The Parties ............................................................................................. 2

    B.    Procedural History................................................................................. 2

    C.    Discovery and Investigation ................................................................. 3

    D.    Mediation and Settlement ..................................................................... 4

III.  SUMMARY OF SETTLEMENT ..................................................................... 5

    A.    Definition of the Class .......................................................................... 5

    B.    Settlement Terms .................................................................................. 5

        1.    Net Settlement Sum.................................................................... 5

        2.    Individual Class Payments......................................................... 6

        3.    PAGA Penalties.......................................................................... 6

        4.    Class Representative Service Payment. ..................................... 6

        5.    Class Counsel's Fees and Expenses........................................... 6

        6.    Settlement Administration Expenses. ........................................ 6

        7.    Uncashed Checks.. ..................................................................... 6

    C.    Released Claims .................................................................................... 7

IV.   CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE
      REQUIREMENTS OF DUE PROCESS AND RULE 23. ................................ 7

V.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ..................... 9

    A.    The Proposed Settlement Is Presumed To Be Fair. ............................. 10

    B.    Relevant Criteria Support Final Approval of the Settlement................. 11

        1.    Plaintiff and Class Counsel Have Adequately Represented the Class............. 12

        2.    The Settlement Was Negotiated at Arm's Length. ............................ 13

        3.    The Relief Provided to the Class Is Adequate.................................... 13

        4.    The Settlement Does Not Provide Preferential Treatment to
            Plaintiff or Any Segment of the Class. ................................... 18

5.    Class Members' Reaction to the Proposed Settlement. ..................................... 18

C.    The Proposed PAGA Allocation Is Fair, Adequate, and Reasonable,

and Advances the Public Policy and Goals Underlying PAGA. ............................ 19

V.    CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Alcala v. Meyer Logistics, Inc.*,
    Case No. CV 17-7211 PSG (AGRx), 2019 WL 4452961 (C.D. Cal. June 17, 2019) ............... 19

*Burns v. Elrod*,
    757 F.2d 151 (7th Cir. 1985) ........................................................................................... 7

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................................... 8

*Deaver v. Compass Bank*,
    Case No. 13-cv-00222-JSC, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ............................. 13

*Green v. Lawrence Service Co.*,
    No. LA CV12-06155 JAK (VBKx), 2013 WL 3907506 (C.D. Cal. July 23, 2013) ................. 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................... 10, 17

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................... 10, 13

*Hopson v. Hanesbrands, Inc.*,
    No. CV-08-0844 EDL, 2008 WL 3385452 (S.D. Cal. Apr. 13, 2009) ........................................ 20

*In re M.L. Stern Overtime Litig.*,
    No. 07-CV-01180BTM (JMA), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) .......................... 19

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................. 10, 12

*In re Synocor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 10

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) .................................................................................... 10

*Loud v. Eden Med. Ctr.*,
    No. C-12-02936 EDL, 2013 WL 4605856 (N.D. Cal. Aug. 28, 2013) ...................................... 16

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ........................................................................................ 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 12, 18

\\

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................ 10

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 17

*Satchell v. Fed. Express Corp.*, Nos. C03-2659 SI, C,
   03-2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................... 13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................ 9, 10, 11

*Viking River Cruises, Inc. v. Moriana*,
   569 U.S. 639, 142 S.Ct. 1906 (2022) .......................................................... 19

*Visceral v. Mistral Grp., Inc.*,
   Case No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .......................... 19

*Young v. Polo Retail, LLC*,
   No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007).......................... 12

*Zamora Jordan v. Nationstar Mortg., LLC*,
   NO. 2:14-CV-0175-TOR, 2019 WL 1966112 (E.D. Wash. May 2, 2019)................................ 17

**State Cases**

*Amaral v. Cintas Corp. No.2*,
   163 Cal. App. 4th 1157 (2008) .................................................................... 15

*Iskanian v. CLS Transp. Los Angeles, LLC*,
   59 Cal. 4th 348 (2014)................................................................................. 19

*Naranjo v. Spectrum Sec. Servs., Inc.*,
   15 Cal. 5th 1056 (2024)............................................................................... 15

*Thurman v. Bayshore Transit Mgmt., Inc.*,
   203 Cal. App. 4th 1112 (2012)…………………………………………………16, 19

**State Statutes**

California Labor Code § 2699(2) .............................................................. 16, 19

**Federal Rules**

Federal Rules of Civil Procedure, Rule 23(c)(2)(B) .................................... 7, 8

Federal Rules of Civil Procedure, Rule 23(e)............................................. 9

Federal Rules of Civil Procedure, Rule 23(e)(1)......................................... 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Federal Rules of Civil Procedure, Rule 23(e)(2) ................................................................ 11

Federal Rules of Civil Procedure, Rule 23(e)(2)(C) ........................................................... 9

Federal Rules of Civil Procedure, Rule 23(e)(3) ................................................................ 13

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

On July 11, 2024, this Court entered an order granting preliminary approval of the

4

proposed Joint Stipulation for Class Action and PAGA Action Settlement and Release

5

("Settlement" or "Settlement Agreement")[1] between Plaintiff Rubian Saflor ("Plaintiff") and

6

Defendant ESA Management, LLC ("Defendant"). Dkt. No. 15. Plaintiff now seeks an order

7

granting final approval of the proposed Settlement.

8

If finally approved, the Settlement will create an all-inclusive, non-reversionary

9

settlement fund in the amount of $1,780,000.00. The proposed Settlement will dispose of this

10

action in its entirety as to the following Class:

11

12

> All hourly, non-exempt employees employed by ESA Management LLC in
> California at any time during the period from December 16, 2019 through
> March 11, 2024.[2]

13

The proposed Settlement is fair, adequate, and reasonable. The Settlement provides

14

substantial benefits to the Class Members when balanced with the strength of Plaintiff's case and

15

the risks and expense of further litigation. The fairness of the Settlement is confirmed by Class

16

Members' response to the Settlement, which has been overwhelmingly positive. Specifically,

17

there have been no objections to the Settlement, and only one (1) request for exclusion, meaning

18

that **99.98%** of Class Members are participating in the Settlement.

19

Additionally, the Settlement was reached through mediated arms-length negotiations with

20

sufficient investigation and discovery that allowed Class Counsel to act intelligently in litigating

21

the case and reaching the Settlement. Class Counsel support the Settlement as being in the best

22

interests of the Class Members. Accordingly, Plaintiff respectfully requests that this Court grant

23

Plaintiff's Motion for Final Approval of Class Action Settlement and enter final judgment.

24

------

25

26

[1] A true and correct copy of the Settlement Agreement executed by the Parties on or about May
26, 2024, is attached as Exhibit 1 to the Declaration of Matthew J. Matern in Support of
Plaintiff's Motion for Final Approval ("Matern Decl.").

27

28

[2] Settlement Agreement, ¶¶ 1.5, 1.12; Dkt. No. 15, ¶ 6. As set forth herein, following preliminary
approval Defendant exercised its right to shorten the Class Period pursuant to paragraph 4.1 of the
Settlement Agreement.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **The Parties**

Defendant is an operator of 82 hotels throughout the State of California. Matern Decl. ¶ 3. Plaintiff is a former non-exempt employee of Defendant who worked at Defendant's locations in San Carlos and San Mateo from approximately 2014 to late 2021. *Id.,* ¶ 4; Declaration of Rubian Saflor in Support of Motion for Final Approval ("Saflor Decl.") ¶ 3; *see also* Dkt. No. 15-3.

According to the Class Data provided to the court-appointed Settlement Administrator, Phoenix Settlement Administrators, there are a total of 4,517 Class Members in the Class Period. Matern Decl. ¶ 5; *see also* Declaration of Jarrod Salinas Regarding Notice and Settlement Administration ("Salinas Decl.") ¶ 5.

B.    **Procedural History**

On May 3, 2022, Plaintiff provided written notice to the California Labor & Workforce Development Agency ("LWDA") and Defendant of her intent to seek civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq.* ("PAGA"). The LWDA did not respond to Plaintiff's May 3, 2022 PAGA Notice. Matern Decl. ¶ 6, Ex. 2.

On August 12, 2022, after fully exhausting PAGA's 65-day notice period, Plaintiff filed a putative wage and hour class and representative action complaint against Defendant entitled *Rubian Saflor v. ESA Management, LLC* (San Mateo County Superior Court Case No. 22-CIV-03312, hereinafter "Action"). The complaint alleged the following ten (10) causes of action: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Pay All Wages Due to Discharged and Quitting Employees; (6) Failure to Maintain Required Records; (7) Failure to Furnish Accurate Itemized Wage Statements; (8) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (9) Unfair and Unlawful Business Practices; and (10) Penalties under the Labor Code Private Attorneys General Act, as Representative Action. *Id.* ¶ 7.

On October 6, 2022, Defendant removed the Action to this Court. *Id.* ¶ 8.

### C.    Discovery and Investigation

Prior to filing the Complaint, Class Counsel conducted an extensive investigation into Plaintiff's claims. Class Counsel interviewed Plaintiff at length, reviewed documents provided by Plaintiff and other publicly available documents and conducted research regarding applicable California Labor Code sections and the Industrial Welfare Commission Wage Orders and Defendant's anticipated defenses. *Id.* ¶ 9.

Following the initiation of the Action, the Parties engaged in formal written discovery. Specifically, Plaintiff propounded Requests for Production of Documents which included, *inter alia*, requests for Defendant's wage and hour policies and employee handbooks, all documents concerning meal periods, rest periods, payment of meal and rest period premiums, the time and payroll records for Plaintiff and the putative class, job descriptions for putative class members, work schedules for putative class members, and other relevant documents. Defendant produced 258 pages of documents in response to these requests. Plaintiff also noticed the deposition of Defendant's Rule 30(b)(6) witness. Plaintiff likewise responded to Interrogatories and Requests for Production of Documents propounded by Defendant, which included production of 150 pages of documents. *Id.* ¶ 10.

After exchanging initial written discovery, counsel for the Parties met and conferred regarding the potential for class-wide resolution of the Action, which led to an agreement to exchange further informal discovery and engage in private mediation. Based on this agreement, Defendant provided Class Counsel with extensive informal discovery prior to mediation, which included: (a) an approximately 15% sampling of Class Members' time and payroll records; (b) employee handbooks and relevant policy documents; and (c) data points regarding the putative class, including the total number of Class Members and Aggrieved Employees, the number of workweeks worked by the Class, the number of pay periods worked by the Aggrieved Employees, and the number of Class Members whose employment with Defendant terminated during the Class Period and PAGA Period. Class Counsel retained the services of an expert data analyst whose analysis of the time and payroll data was instrumental in creating a damages model

for the mediation. *Id.* ¶ 11.

Based on the information and record developed through Plaintiff's investigation and formal and informal discovery, Class Counsel had thoroughly investigated and researched Plaintiff's claims and Defendant's defenses and was able to act intelligently and effectively in negotiating the proposed Settlement. *Id.* ¶ 12.

**D.    Mediation and Settlement**

On October 19, 2023, the Parties attended a private mediation session with Lisa Klerman, Esq., an experienced mediator with extensive experience with complex wage and hour litigation. The settlement discussions during the mediation were conducted at arm's length and, although conducted in a professional matter, were adversarial. The Parties went into mediation willing to explore the potential for a settlement of the dispute, but each side was also prepared to litigate its position through class certification, trial, and appeal if a settlement was not reached. Throughout the mediation, the Parties debated their respective positions and exchanged views regarding the strengths and weaknesses of their claims and defenses. The mediation ultimately resulted in an agreement to resolve the Action in its entirety. On or about January 11, 2024, the Parties fully executed a Memorandum of Understanding documenting the essential terms of their agreement to settle the Action. *Id.* ¶ 13.

On or about May 26, 2024, the Parties fully executed the long form Settlement Agreement. *Id.* ¶ 14, Ex. 1.

On June 17, 2024, Class Counsel submitted a copy of the proposed Settlement Agreement as well as information pertaining to Plaintiff's Motion for Preliminary Approval to the LWDA. *Id.* ¶ 15, Ex. 3.

On or about June 20, 2024, Plaintiff filed the Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") with this Court. *Id.* ¶ 16; Dkt. No. 15. On or about July 11, 2024, this Court entered the Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). Matern Decl. ¶ 17; Dkt. No. 16.

**III.    SUMMARY OF SETTLEMENT**

    **A.    Definition of the Class**

    The proposed Settlement Class consists of all non-exempt employees employed by Defendant in California at any time during the Class Period. Settlement, ¶ 1.5; Dkt. No. 16, ¶ 6. As originally defined in the Settlement Agreement, the Class Period begins on December 16, 2019 and ends on (a) the date of preliminary settlement approval, or (b) 90 days after the execution of the Settlement Agreement (i.e. August 24, 2024), whichever is later. Settlement, ¶ 1.12.

    The Settlement also includes a subgroup of "Aggrieved Employees" which consists of all non-exempt employees employed by Defendant in California at any time during the PAGA Period, which is defined as June 8, 2021 through (a) the date of preliminary approval (i.e. July 11, 2024), or (b) 90 days after the execution of the Settlement Agreement (i.e. August 24, 2024), whichever is later. *Id.* ¶¶ 1.4, 1.32.

    However, as set forth in Section IV below, Defendant exercised its right to shorten the Class Period end date to March 11, 2024, due to the triggering of the Settlement Agreement's escalator clause. Matern Decl. ¶¶ 19-21; Settlement, ¶ 4.1; *see also* Salinas Decl. ¶ 5.

    **B.    Settlement Terms**

    Under the proposed Settlement, the claims of all Class Members shall be settled for the Gross Settlement Sum of $1,780,000.00. *Id.* ¶¶ 1.22, 3.1. The employer's share of any and all payroll taxes will be paid by Defendant separately from the Gross Settlement Sum. *Id.*, ¶¶ 1.22, 3.1. The Gross Settlement Sum is non-reversionary, meaning no portion will revert to Defendant or result in an unpaid residue. *Id.* ¶ 3.1. The Gross Settlement Sum shall be allocated as follows:

        1.    <u>Net Settlement Sum</u>. The Net Settlement Sum is the Gross Settlement Sum less the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment, the Class Representative Service Payment, the Administrator Expenses Payment, Individual PAGA Payments, and the LWDA PAGA Payment. *Id.* ¶ 1.28.

2.    <u>Individual Class Payments</u>. Participating Class Members shall receive a proportionate share of the Net Settlement Sum based on the number of Workweeks worked by each respective Participating Class Member during the Class Period. *Id.* ¶¶ 1.23, 3.2.4. Ten percent of Individual Class Payments shall be allocated as wages, and the remaining 90% shall be allocated as interest and penalties. *Id.* ¶ 3.2.4.1.

3.    <u>PAGA Penalties</u>. One Hundred Thousand Dollars ($100,000) of the Gross Settlement Sum will be allocated towards the satisfaction of the PAGA Penalties. *Id.* ¶¶ 1.35, 3.2.5. Seventy-five percent (75%) of the PAGA Penalties (i.e., $75,000.00) will be paid to the LWDA, and 25% ($25,000.00) will be distributed to Aggrieved Employees as Individual PAGA Payments. *Id.* ¶¶ 1.24, 1.27, 3.2.5. The portion of the PAGA Penalties allocated to Aggrieved Employees will be distributed to Aggrieved Employees on a pro rata basis, based on each Aggrieved Employees' respective number of pay periods worked for Defendant during the PAGA Period. *Id.* ¶¶ 1.24, 3.2.5.1. Class Members who qualify as Aggrieved Employees shall receive an Individual PAGA Payment, regardless of whether they submitted a Request for Exclusion from the settlement of Class claims. *Id.* ¶ 7.5.4.

4.    <u>Class Representative Service Payment.</u>  Subject to Court approval, Plaintiff shall receive up to $10,000.00 for her time and effort in bringing and presenting the litigation and for releasing her claims. *Id.* ¶¶ 1.14, 3.2.21. I

5.    <u>Class Counsel's Fees and Expenses.</u> Subject to Court approval, Class Counsel shall receive up to one-third (1/3) of the Gross Settlement Sum (i.e. $593,333.33) and reimbursement of costs up to $20,000.00. *Id.* ¶¶ 1.7, 3.2.2.

6.    <u>Settlement Administration Expenses</u>. Subject to court approval, the Administrator will receive payment for Settlement Administration Expenses in the amount of $30,000.00. Salinas Decl. ¶ 16, Ex. B; Matern Decl. ¶ 45; Settlement, ¶ 3.2.3; Dkt. No. 18.

7.    <u>Uncashed Checks</u>. Checks for Individual Class Payments and Individual PAGA Payments must be cashed within 180 days. Settlement, ¶ 4.4.1. Any funds from checks that are not cashed within 180 days shall be deposited with the State Controller's Office

1    Unclaimed Property Division, with the identity of the Participating Class Member to whom the

2    funds belong. *Id.* ¶ 4.4.3.

3    **C.    Released Claims**

4        Upon the full funding of the Gross Settlement Sum and all employer-side payroll taxes,

5    Participating Class Members shall be deemed to release the Released Parties from all Released

6    Class Claims as defined in the Settlement Agreement. *Id.* ¶¶ 1.40, 5.2. In addition, the LWDA,

7    State of California, Aggrieved Employees, and Plaintiff shall be deemed to release the Released

8    Parties from all Released PAGA Claims defined in the Settlement Agreement. *Id.* ¶¶ 1.41, 5.3.

9    Plaintiff, in her individual capacity only, also agrees to broader general release of all claims

10   against Defendant. *Id.* ¶ 5.1.

11   **IV.    CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE**

12   **REQUIREMENTS OF DUE PROCESS AND RULE 23.**

13       Before the Court may grant final approval of a proposed class-action settlement,

14   adequate notice of the settlement must be provided to the class members. Fed. R. Civ. P.

15   23(e)(1). Class members should be given "the best notice practicable under the circumstances,

16   including individual notice to all members who can be identified through reasonable effort."

17   Fed. R. Civ. P. 23(c)(2)(B). The notice may be by United States mail or other appropriate

18   means. *Id.* The "best notice practicable" does not require receipt of actual notice by all class

19   members in order to comport with both Rule 23 and the requirements of due process, but it

20   often includes (as in this case) direct notice to class members who can be identified by regular

21   mail. *See, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

22       For a class certified under Rule 23(b)(3), class notice must "clearly and concisely state

23   in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class

24   certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

25   appearance through an attorney if the member so desires; (v) that the court will exclude from

26   the class any member who requests exclusion; (vi) the time and manner for requesting

27   exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

28

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations and quotations omitted).

The Administrator has implemented the notice plan, as preliminarily approved by the Court on July 11, 2024. Settlement, ¶¶ 7.1-7.8; *see also* Dkt. No. 16, ¶¶ 11-16, 21; Salinas Decl. ¶¶ 3-11. Specifically, on August 10, 2024, the Administrator received the Class Data from Defendant containing each Class Member's full name, last known address, number of Class Period Workweeks and PAGA Pay Periods.  Matern Decl. ¶ 18; Salinas Decl. ¶ 3.  Following receipt of the Class Data, the Administrator informed the Parties that, based on the Class Data, the escalator clause set forth in paragraph 4.1 of the Agreement was triggered. Matern Decl., ¶ 19; Settlement, ¶ 4.1. In response, Defendant exercised its right to shorten the Class Period to end on March 11, 2024, which the Administrator reported as the last day before the total number of Workweeks worked by Class Members was equal to or more than the 211,537 Workweek threshold. Matern Decl. ¶ 19; Settlement, ¶ 4.1; *see also* Salinas Decl. ¶ 5.

Following receipt of the Class Data from Defendant, the Administrator further notified the Parties that the administration fees would increase from $25,000.00, as originally provided in the Settlement Agreement, to $30,000.00. Matern Decl. ¶ 20. The increase in administration fees was due to the fact that the Class size, which was estimated to be 3,893 individuals when potential administration fees were originally calculated at the time of the Parties' mediation in October of 2023, had increased to 4,517 individuals. *Id.* On September 9, 2024, the Parties filed a joint stipulation to: (i) deduct the additional $5,000.00 in administration fees from the Gross Settlement Sum; and (ii) modify the Settlement administration timeline set forth in the Preliminary Approval Order to accommodate the delay in issuing Class Notices caused by the unexpected increase in Settlement administration fees. *Id.* ¶ 21; Dkt. No. 17. The Court entered an order approving the Joint Stipulation on September 11, 2024. Matern Decl. ¶ 21; Dkt. No. 18.

Prior to mailing, the Administrator updated the Class Data by performing a search on National Change of Address database. Salinas Decl. ¶ 4. On September 28, 2024, the Administrator mailed Class Notices to all 4,517 Class Members by first-class U.S. mail. *Id.* ¶ 6.

Of the 4,517 Class Notices mailed by the Administrator, 41 Class Notices were returned as undeliverable without a forwarding address. *Id.* ¶ 7. The Administrator promptly attempted to locate a current mailing address through a skip trace, and successfully obtained 41 updated addresses. *Id.* The Settlement Administrator promptly re-mailed the Class Notice to the new addresses via first class mail. *Id.* As of the filing of this Motion, 0 Class Notices remain undeliverable. *Id.* ¶ 8.

As of the filing of this Motion, the Administrator has received 0 workweek disputes, 0 objections, and 1 request for exclusion. *Id.* ¶¶ 9-11. The deadline for Class Members to submit workweek disputes, objections, and/or requests for exclusion was November 2, 2024. *Id.* Thus, the Administrator reports that there are a total of 4,516 Participating Class Members. *Id.* ¶ 12.

Per the terms of the Settlement, upon final approval, a copy of the Final Judgment will be posted on the Administrator's website. Agreement, ¶ 7.8.1.

In short, the notice procedures undertaken by the Settlement Administrator constitute the best notice practicable under the circumstances, and fully comply with Rule 23 and the requirements of due process.

## V.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e). In determining whether to grant final approval, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2)(C); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To assess the merits of a final settlement in a class action, courts "balance a number of factors," including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence

1    of a governmental participant; and the reaction of the class members to the proposed

2    settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton*,

3    327 F.3d at 959; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

4    The Court considers the "settlement taken as a whole." *See Hanlon*, 150 F.3d at 1026.

5         Although the Court has broad discretion in making a final determination that a class-

6    action settlement is fair, the Court's discretion is "limited to the extent necessary to reach a

7    reasoned judgment that the [settlement] is not the product of fraud or overreaching by, or

8    collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

9    reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. A

10   presumption of fairness exists where "the settlement is recommended by class counsel after

11   arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL

12   1627973, at *8 (N.D. Cal. Apr. 29, 2011). In considering whether to grant final approval of a

13   class-action settlement, the Ninth Circuit has recognized "a strong judicial policy that favors

14   settlements, particularly where complex class action litigation is concerned." *In re Synocor*

15   *ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). In the end, "[s]ettlement is the offspring of

16   compromise; the question [that the court] addresses is not whether the final product could be

17   prettier, smarter or snazzier, but whether it is fair, adequate[,] and free from collusion." *Hanlon*,

18   150 F.3d at 1027

19        **A.    The Proposed Settlement Is Presumed To Be Fair.**

20        The Court should begin its analysis with a presumption that the proposed Settlement is

21   fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-

22   length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D.

23   607, 610 (S.D. Cal. 2008) (citations omitted); *see Harris*, 2011 WL 1627973, at *8 ("An initial

24   presumption of fairness is usually involved if the settlement is recommended by class counsel

25   after arm's-length bargaining."). Courts find that "parties represented by competent counsel are

26   better positioned than courts to produce a settlement that fairly reflects each party's expected

27   outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

28

1    Here, the parties negotiated the proposed Settlement with the assistance of an

2   experienced wage-and-hour mediator, Lisa Klerman, Esq., on October 19, 2023. Matern Decl. ¶

3   13. The Parties went into mediation willing to explore the potential for settlement, but were

4   prepared to litigate their position through trial and appeal if a settlement had not been reached.

5   *Id*. Throughout the mediation, the Parties debated their respective positions and exchanged

6   views regarding the strengths and weaknesses of their claims and defense. *Id.* The mediation

7   ultimately resulted in an agreement to resolve the Action in its entirety. *Id*. These circumstances

8   are the antithesis of collusion and show that the settlement negotiations were at arm's length

9   and, although conducted in a professional manner, were adversarial. *Id.*

10   Moreover, Plaintiff and Class Counsel were able to make an informed decision regarding

11   settlement, as Class Counsel conducted significant formal and informal discovery and

12   investigation prior to the mediation, and fully evaluated Defendant's potential exposure and risk

13   associated with continued litigation. *Id.* ¶¶ 9-12, 24-34. Based these considerations, Class

14   Counsel support the Settlement as fair, adequate, and reasonable, and in the best interests of the

15   Class. *Id*. ¶ 35.

16   **B.**    **Relevant Criteria Support Final Approval of the Settlement.**

17   In deciding whether to grant final approval of a class-action settlement, courts must

18   determine whether it is "fair, reasonable, and adequate" after considering whether "(a) the class

19   representatives and class counsel have adequately represented the class; (b) the proposal was

20   negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal

21   treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors are

22   not exhaustive, however, and should be tailored to each case. *Staton*, 327 F.3d at 959; *see* Fed. R.

23   Civ. P. 23(e)(2) 2018 advisory committee's note ("The goal of this amendment is not to displace

24   any factor, but rather to focus the court and the lawyers on the core concerns of procedure and

25   substance that should guide the decision whether to approve the proposal."). Applied to this case,

26   the relevant criteria support final approval of the proposed Settlement.

27   ///

28

**1.    Plaintiff and Class Counsel Have Adequately Represented the Class.**

Final approval is warranted because Plaintiff and Class Counsel conducted an adequate investigation and discovery prior to reaching a settlement. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The greater the amount of discovery that has been completed, the more the parties have 'a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007).

Class Counsel conducted extensive investigation and both formal and informal discovery prior to mediation. After the Action was initiated, the Parties engaged in formal written discovery which resulted in the exchange of hundreds of pages of documents. Matern Decl., ¶ 10. Prior to mediation, Defendant also provided informal discovery to Class Counsel consisting of: (a) an approximately 15% sampling of Class Members' time and payroll records; (b) employee handbooks and relevant policy documents; and (c) data points regarding the putative class, including the total number of Class Members and Aggrieved Employees, the number of workweeks worked by the Class, the number of pay periods worked by the Aggrieved Employees, and the number of Class Members whose employment with Defendant terminated during the Class Period and PAGA Period. *Id.* ¶ 11. Class Counsel retained the services of an expert statistician whose analysis of the time and payroll data was instrumental in creating a damages model for the mediation. *Id.*

Additionally, Class Counsel was able to adequately represent the class in negotiating the Settlement due to Class Counsel's extensive experience in handling similar class actions. *Id.* ¶¶ 36-43. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378. Through their investigation, review of formal and informal discovery, and the mediation, Class

1   Counsel had an intimate understanding of the instant litigation, and believe that the Settlement

2   is fair, adequate, and reasonable. Matern Decl. ¶ 35.

3          **2.      The Settlement Was Negotiated at Arm's Length.**

4       An initial presumption of fairness exists where, as here, "the settlement is recommended

5   by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198

6   EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). The use of an

7   experienced mediator supports a finding that settlement negotiations were both informed and

8   non-collusive. *Satchell v. Fed. Express Corp*., Nos. C03-2659 SI, C 03-2878 SI, 2007 WL

9   1114010, at *4 (N.D. Cal. Apr. 13, 2007); *Deaver v. Compass Bank*, Case No. 13-cv-00222-

10  JSC, 2015 WL 4999953, at *7 (N.D. Cal. Aug. 21, 2015).

11      The Settlement was reached after a full-day mediation with an experienced wage and

12  hour mediator. Matern Decl. ¶ 13. The settlement negotiations were at arm's length and

13  although conducted in a professional manner, were adversarial. *Id*. The Parties went into

14  mediation willing to explore the potential for settlement but were prepared to litigate their

15  position through trial and appeal if a settlement had not been reached. *Id.* Moreover, as

16  discussed above, Plaintiff and Class Counsel were able to make an informed decision regarding

17  settlement and were able to act intelligently and effectively in negotiating the proposed

18  Settlement, as Class Counsel conducted significant formal discovery, informal discovery and

19  investigation prior to the mediation, obtained copious records and data, and prepared a damages

20  model which was based on their expert's analysis of Class Members' time and payroll records. *Id.*

21  ¶¶ 9-12.

22         **3.      The Relief Provided to the Class Is Adequate.**

23      The third factor considers whether the relief provided to the class is adequate, taking into

24  account: "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed

25  method of distributing relief to the class, including the method of processing class-member

26  claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

27  (iv) any agreement required to be identified under Rule 23(e)(3)." Here, Defendant will pay

28

**$1,780,000.00** to resolve the action. Settlement, ¶¶ 1.22, 3.1. This outcome will yield an average Individual Class Payment of $237.34 to Participating Class Members, with the highest Individual Class Payment estimated to be $1,132.67. Matern Decl. ¶ 34; Salinas Decl. ¶ 14. It is further estimated that Aggrieved Employees will receive an average Individual PAGA Payment of $7.18, with the highest Individual PAGA Payment estimated to be $39.03. Matern Decl. ¶ 34; Salinas Decl. ¶ 15. This is a substantial recovery which takes into consideration the significant risks of proceeding with the litigation. Matern Decl. ¶¶ 24-33. Accordingly, this factor favors final approval of the Settlement.

          **a.**      **Defendant's Maximum Potential Exposure and the Costs, Risks and Delay of Further Litigation.**

Prior to mediation, Class Counsel carefully analyzed all available data and information, and calculated the maximum potential damages for Plaintiff's class claims, exclusive of interest, to be approximately $26,338,080.44. Matern Decl. ¶ 24. Class Counsel also separately calculated Defendant's maximum potential liability for civil penalties under PAGA to be approximately $15,882,800.00. *Id.* ¶ 25.

Although Defendant's maximum potential liability in this action is substantial, such calculations assume that Plaintiff fully prevails on all causes of action at every stage of litigation, from class certification through trial and appeals. *Id.* ¶ 27. In reaching the decision to settle, Class Counsel considered the risks of proceeding with the litigation, including inter alia: (a) the risk that class certification could be denied; (b) the burdens of proof necessary to establish liability, (c) the viable defenses; (d) the difficulty in establishing damages; (e) the likelihood that the court would reduce any civil penalties awarded as authorized under California Labor Code section 2699.3; (f) the likelihood of success at trial; and (g) the probability of appeal in the event of a favorable judgment. *Id.* ¶ 28.

For example, while Plaintiff and Class Counsel remain confident in the merits of the Class's claims, a legitimate controversy exists as to each cause of action. Plaintiff contends that Class Members were forced to work off-the-clock, pressured to delay, shorten, or forego their meal and rest periods, and pay for business expenses out of pocket for which they were not

reimbursed. On the other hand, Defendant contended that Class Members received meal and rest periods, were properly paid premiums for any missed breaks, and were paid for all hours worked. Defendant further contends that it maintained compliant written policies that complied with applicable California law throughout the Class Period. Defendant contended Plaintiff's claims are not suitable for class certification because individual issues and affirmative defenses would predominate should this case go to trial. As with all potential class action cases, Defendant asserted that this was a complex case raising difficult issues of manageability and common proof. While Plaintiff and Class Counsel were confident that this case presented common issues that were suitable for class-wide adjudication, they recognized that there is still a significant risk that the Court could ultimately deny class certification. *Id.* ¶ 29.

Plaintiff and Class Counsel also recognized that there was significant risk associated with claims for wage statement and waiting time penalties, which accounted for over 60% of Defendant's potential exposure. These claims are derivative of Plaintiff's primary claims for meal period, rest period, and off-the-clock violations. Accordingly, if the Court denied relief on the primary predicate claims, Plaintiff's wage statement and waiting time penalty claims would also fail. Even if derivative wage statement penalties were available, the finder of fact would then have to determine that Defendant's conduct was willful, knowing and intentional. This is very difficult to prove even if the class were to prevail on the merits of the underlying claims. *Id.* ¶ 30; *see, e.g., Amaral v. Cintas Corp. No.2*, 163 Cal. App. 4th 1157, 1203-1204 (2008) (holding that the employer did not willfully fail to pay wages under Cal. Lab. Code § 203 even though the class prevailed on the merits on the underlying claim for failing to pay living wages); *Naranjo v. Spectrum Sec. Servs., Inc.*, 15 Cal. 5th 1056 (2024) (holding that California Labor Code § 226 allows for a defense based on good faith belief in compliance).

Plaintiff and Class Counsel also recognized that proving the amount of wages due to each Class Member would be an expensive, time-consuming, and uncertain proposition. In order to prove liability and damages, Class Counsel would be required to request and analyze thousands of pages of additional documents, which will have to be analyzed with the assistance of an expert in

order to establish violations and damages. Obtaining cooperation from current employees would also be difficult, given the likely reluctance to aid prosecution of a lawsuit against a current employer. On the other hand, Defendant would likely be able to obtain the cooperation of its employees. Proving damages (and PAGA penalties) to a jury and the Court under these circumstances is an extremely risky endeavor. Moreover, even if Plaintiff prevailed at class certification and trial, possible appeals would substantially delay any recovery by the Class. Matern Decl. ¶ 31.

There were also significant risks associated with Plaintiff's PAGA claim. The merits of the PAGA claim involve overlapping factual determinations with the class claims, and Plaintiff recognized the possibility that she could recover nothing if the Court denied relief on the underlying claims. *See Loud v. Eden Med. Ctr.*, No. C-12-02936 EDL, 2013 WL 4605856, at *13 (N.D. Cal. Aug. 28, 2013); *Green v. Lawrence Service Co.,* No. LA CV12-06155 JAK (VBKx), 2013 WL 3907506, at *5, n. 5 (C.D. Cal. July 23, 2013) ("[W]hether each PAGA claims succeeds or fails is determined by the merits of the substantive claims on which each is based."). Plaintiff and Class Counsel were also cognizant that courts have discretion to greatly limit the penalties awarded under the PAGA. Cal. Lab. Code § 2699(2) (West 2024); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1117 (2012). Defendant denied that it violated any provisions of the California Labor Code and argued that, even if any such violations occurred, they were not "willful," such that Plaintiff would not be able to recover any heightened penalties. Furthermore, where an underlying award for unpaid compensation is provided, there is a significant risk that the penalties awarded under PAGA would be reduced, as it may be determined that the unpaid compensation award satisfies PAGA's policy goals and purpose. In evaluating this claim and the proposed settlement, Class Counsel took these factors into consideration, as well as Defendant's defenses to the underlying causes of action, the unsettled state of the law, and the risks and costs of continued litigation. Matern Decl. ¶ 32.

Thus, although Plaintiff and Class Counsel are confident of the merits of this case and their ability to prevail at both class certification and trial, they also recognize the significant risk

and expense of continued litigation, trial, and possible appeals, all of which would substantially delay and reduce any recovery by the class members. These risks are all obviated by the Settlement, which if approved by the Court will ensure that Class Members receive timely relief without the risk of an unfavorable judgment. *Id.* ¶ 33. The fact that the Settlement will eliminate delay and further expense weighs strongly in favor of approval. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Where, as here, the Parties face significant uncertainty, the attendant risks also favor settlement. *Hanlon*, 150 F.3d at 1026.

### b.      The Proposed Distribution Method Is Effective.

The Settlement provides a straightforward process for distributing the Net Settlement Sum to Class Members. Class Members and Aggrieved Employees are not required to submit a claim to receive a share of the Net Settlement Sum. Settlement, ¶ 3.1. Individual Class Payments will be distributed to Participating Class Members based on the number of weeks worked by Class Members during the Class Period. Settlement, ¶¶ 1.23, 3.2.4. Similarly, Individual PAGA Payments will be distributed to Aggrieved Employees based on the number of pay periods worked during the PAGA Period, regardless of whether they opt out of the Settlement Class. Settlement, ¶¶ 1.24, 3.2.5.1.

Checks for Individual Class Payments and/or Individual PAGA Payments will be negotiable for 180 calendar days from the date of mailing. Settlement, ¶ 4.4.1. After 180 days, the Administrator will distribute the value of any undeliverable or uncashed checks to the State Controller's Office Unclaimed Property Fund in the name of the Class Member or Aggrieved Employee, which will allow them to collect their respective Individual Class Payment and/or Individual PAGA Payment at any time in the future. Settlement, ¶ 4.4.3. Thus, the proposed method of distribution "equitably and effectively distribute[s] relief to the Class." *Zamora Jordan v. Nationstar Mortg., LLC*, NO. 2:14-CV-0175-TOR, 2019 WL 1966112, at *4 (E.D. Wash. May 2, 2019).

//

//

**4.    The Settlement Does Not Provide Preferential Treatment to Plaintiff or Any Segment of the Class.**

Under the fourth factor, the Court examines whether the proposed settlement provides preferential treatment to any class member. Here, the proposed Settlement poses no risk of unequal treatment of any Class Member or Aggrieved Employee, as each Participating Class Member's Individual Class Payment will be calculated based upon the number of weeks worked during the Class Period and each Aggrieved Employee's Individual PAGA Payment will be based on the number of pay periods worked during the PAGA Period. Settlement, ¶¶ 1.23, 1.24, 3.2.2., 3.2.5.1.

The Settlement provides for a Class Representative Service Payment to Plaintiff up to $10,000.00, subject to court approval. *Id.* ¶¶ 1.14, 3.2.1. As set forth in Plaintiff's Motion for Attorneys' Fees and Costs and Class Representative Service Payment, this modest payment is appropriate based on the substantial risk assumed by and the services undertaken by Plaintiff on behalf of the Class Members. Saflor Decl. ¶¶ 4-16; *see also* Dkt. No. 15-3. Due to Plaintiff's efforts and personal sacrifice, all Class Members can now benefit from a $1,780,000.00 settlement, with awards of up to $1,132.67. Matern Decl. ¶ 34; Salinas Decl. ¶ 14. The proposed Class Representative Service Payment—which constitutes less than .6% of the Gross Settlement Sum— is reasonable and deserved, and does not evidence any preferential treatment.

**5.    Class Members' Reaction to the Proposed Settlement.**

In assessing the fairness, adequacy, and reasonableness of a proposed settlement, courts also consider the reaction of the class. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29.

This factor also favors final approval. To date *zero* Class Members have objected to the Settlement. Salinas Decl. ¶ 10. Additionally, only one Class Member has requested exclusion from the Settlement, meaning 99.98% of the Class shall participate in the Settlement. Salinas

Decl. ¶¶ 9, 12. Given the overwhelmingly positive reaction from Class Members, final approval of the Settlement is appropriate.

**C.** **The Proposed PAGA Allocation Is Fair, Adequate, and Reasonable, and Advances the Public Policy and Goals Underlying PAGA.**

The settlement amount allocated for penalties under PAGA is fair, adequate, and reasonable, and advances the public policy and goals underlying PAGA. As a preliminary matter, courts have discretion to greatly reduce the amount awarded under PAGA. Cal. Lab. Code § 2699(2) (West 2024); *Thurman*, 203 Cal. App. 4th at 1135. This is particularly true where a plaintiff alleges both class claims and a representative action for civil penalties. *Visceral v. Mistral Grp., Inc.,* Case No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016).

Further, the fundamental purpose of PAGA is to ensure compliance with the California Labor Code in light of the government's limited enforcement resources. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014), abrogated on different grounds in *Viking River Cruises, Inc. v. Moriana,* 569 U.S. 639, 142 S.Ct. 1906 (2022).

Where, as here, the parties reach a substantial settlement providing employees with monetary compensation for underlying Labor Code violations, many of PAGA's underlying policy objectives are satisfied. Accordingly, there exists a substantial likelihood that the Court would exercise its discretion and reduce the amount awarded for PAGA penalties even if Plaintiff proved successful at trial. Additionally, PAGA's shorter statute of limitations justifies a limited allocation when compared to the amount allocated for Labor Code violations.

Here, the $100,000.00 PAGA allocation is well within the range approved by California courts and therefore should be approved. *Alcala v. Meyer Logistics, Inc.,* Case No. CV 17-7211 PSG (AGRx), 2019 WL 4452961, at *9 (C.D. Cal. June 17, 2019) (finding that settlement of claims for PAGA penalties representing 1.25 percent of gross settlement amount was reasonable, as it **"**falls within the zero to two percent range for PAGA claims approved by courts"); *In re M.L. Stern Overtime Litig*., No. 07-CV-01180BTM (JMA), 2009 WL 995864, at *1 (S.D. Cal.

Apr. 13, 2009) (approving PAGA settlement of two percent); *Hopson v. Hanesbrands, Inc.,* No. CV-08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 0.3 percent).

**V.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court grant final approval of the Settlement and enter final judgment thereon.

Respectfully submitted,

DATED: November 8, 2024              **MATERN LAW GROUP, PC**

By: _____
    MATTHEW J. MATERN
    JOSHUA D. BOXER
    SARA B. TOSDAL
    Attorneys for Plaintiff Rubian Saflor,
    individually, and on behalf of all others
    similarly situated